IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CARLOS CREGAN,<br>    Plaintiff,<br><br>v.<br><br>JENNIFER GARCIA, *et al.*,<br>    Defendants. | Case No. 1:25-cv-01306-JEH |

**Merit Review Order**

Plaintiff, proceeding *pro se* and currently incarcerated at Pinckneyville Correctional Center, filed a Second Amended Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was detained at the McLean County Detention Facility ("Jail"). (Doc. 12). This case is before the Court for a merit review of Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915A.

**I**

The Court must "screen" Plaintiff's Second Amended Complaint and dismiss any legally insufficient claim or the entire action if warranted. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the Second Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in the Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

II

Plaintiff files suit against Nurse Jennifer Garcia, Correctional Officer Kirkland, Jail Superintendent Diane Hughes, Advanced Correctional Healthcare ("ACH"), and McLean County.

Plaintiff alleges Defendant Nurse Garcia conducted "med line" in the west pod on March 13, 2025. While waiting in the long line, Plaintiff became frustrated and sighed loudly. In response, Defendant Garcia allegedly yelled at Plaintiff: "Do you ever shut your cock hole?" (Doc. 12 at p. 6). When another detainee asked who she was speaking to, Defendant Garcia allegedly looked at Plaintiff and said, "Yeah, you heard me right! I said cock hole!" *Id.* Plaintiff alleges Defendant Garcia made these comments in front of approximately fifty detainees.

Plaintiff states Defendant Kirkland, the correctional officer assigned to the pod, was present during the incident. Plaintiff states he looked at Defendant Kirkland for assistance, but he only chuckled nervously. When Plaintiff later asked Defendant Kirkland why he did not react, he allegedly told Plaintiff he was not trained to deal with staff misconduct. Plaintiff alleges Defendant Kirkland did not report the incident.

At the time of the incident, Plaintiff alleges he was a pretrial detainee and had been charged with sexual assault. He claims staff members were aware of his charges because he had been at the Jail for two years. Plaintiff alleges "people had already left [him] alone about the nature of [his] charges," but Defendant Garcia's insults caused a "catastrophic domino effect" and made his charges relevant again. *Id.* at p. 7. Plaintiff alleges his environment became increasingly hostile. Other detainees constantly degraded, humiliated, and harassed him. Some unknown detainees made sexual advances toward him. Plaintiff alleges he was forced to fight someone to defend himself. Plaintiff alleges the situation traumatized him and caused mental anguish.

Plaintiff alleges Defendant ACH, Defendant Garcia's employer, allowed her to resign and did not fire her. Plaintiff claims Defendant ACH was responsible for hiring, training, and disciplining their staff.

Plaintiff alleges Defendants McLean County and Superintendent Hughes were responsible for hiring, training, and firing correctional officers and failed to train officers how to address staff misconduct, including verbal harassment.

### III

Because Plaintiff was a pretrial detainee, his claims arising from the conditions of his confinement are governed by the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment Cruel and Unusual Punishment Clause. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015); *Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015)). "Nonetheless, Plaintiff's claim is analyzed under the same lens as an Eighth Amendment claim for cruel and unusual punishment." *Peters v. Hendrickson*, No. 23-CV-232-WMC, 2025 WL 3641161, at *4 (W.D. Wis. Dec. 15, 2025) (citing *Smith*, 803 F.3d at 310) ("We have held that there is little practical difference, if any, between the standards applicable to pretrial detainees and convicted inmates when it comes to conditions of confinement claim, and that such claims brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment.").

"Verbal harassment generally does not rise to the level of a constitutional violation, though some harassment may be serious enough to constitute cruel and unusual punishment." *Boston v. Brown*, No. 25-CV-1525-DWD, 2025 WL 2377992, at *2 (S.D. Ill. Aug. 15, 2025) (citing *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review)); *see also Lisle v. Welborn*, 933 F.3d 705, 718-19 (7th Cir. 2019) (finding statements allegedly made by a nurse about an inmate's failed attempted

suicide could constitute cruel and unusual punishment because "medical staff use[d] an inmate's known psychological vulnerability to cause psychological anguish"). "[V]erbal abuse using derogatory terms that suggest a detainee is homosexual may increase the likelihood of sexual assault from other inmates, and thus, can be an Eighth Amendment violation." *Peters*, 2025 WL 3641161, at *4 (citing *Beal*, 803 F.3d at 358-59).

Here, Plaintiff alleges the degrading remarks were made in front of approximately fifty other detainees. Plaintiff alleges staff members were aware he faced sexual assault charges. Based on the nature of his charges, and fueled by Defendant Garcia's sexual insults, other detainees constantly degraded, humiliated, and harassed him. Some unknown detainees made sexual advances, telling Plaintiff that "they heard [he] was a cock sucker" and asked if he was interested in them. (Doc. 12 at p. 7). Plaintiff states he was forced to physically defend himself. The Court finds Plaintiff's allegations are sufficient to proceed on a Fourteenth Amendment claim against Defendant Garica.

Plaintiff alleges Defendant Kirkland, who was present during the incident, chuckled nervously and did not come to Plaintiff's aid or report the incident. Plaintiff's threadbare allegations against Defendant Kirkland are insufficient to state a constitutional claim. Defendant Kirkland is dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure (b)(6) and § 1915A.

Plaintiff alleges Defendant ACH is liable because Defendant Garcia was not fired and was allowed to resign after the incident. Plaintiff also alleges ACH is responsible for hiring, training, and firing their staff. Plaintiff claims it is obvious Defendant Garcia was not trained or disciplined properly. Private corporations, such as ACH, have potential liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978), if they perform a governmental function and, in doing so, injure plaintiff through an unconstitutional policy or practice.

*Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions). "Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15-5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)). "Although *Monell* claims may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing." *Taylor*, 2016 WL 3227310, at *4. Plaintiff has not pled the existence of a particular policy or practice nor alleged that he was injured by an unofficial policy or custom. Allegedly failing to train or discipline Defendant Garica is not a policy, practice, or custom. Defendant ACH is dismissed without prejudice for failure to state a claim under Rule (b)(6) and § 1915A.

Plaintiff alleges Defendants Superintendent Hughes and McLean County are liable for failing to train correctional officers how to respond to staff misconduct. In a failure to train claim, liability is not based on *respondeat superior*, but rather the supervisor's own actions or inactions. *Stewart v. Eiler*, No. CIV. 08-1033, 2008 WL 548637, at *2 (C.D. Ill. Feb. 26, 2008). As Plaintiff pleads only the incident regarding himself, he fails to plead that Defendants should have been on notice and rectified deficiencies in staff training. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2006) ("There is no clear consensus as to how frequently [certain conduct] must occur to impose *Monell* liability, except that it must be more than one instance, or even three.") (internal citations omitted)).

Plaintiff also did not include any specific allegations to demonstrate that Defendant Superintendent Hughes was personally involved in any constitutional deprivation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). There is no *respondeat superior* under § 1983. In other words, Defendant Hughes cannot be liable solely based on her supervisory role. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). If Jail officials are named, they must be named in their individual capacities, and Plaintiff must allege that the official personally participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Defendant Hughes and McLean County are dismissed without prejudice for failure to state a claim under Rule (b)(6) and § 1915A.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Second Amended Complaint under 28 U.S.C. § 1915A, Plaintiff alleged sufficient facts to proceed on a Fourteenth Amendment conditions of confinement claim against Defendant Jennifer Garcia based on the alleged verbal harassment on March 13, 2025. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendants Advanced Correctional Healthcare, Diane Hughes, McLean County, and Kirkland are DISMISSED WITHOUT PREJUDICE for failure

to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Clerk is directed to TERMINATE these Defendants.

3) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendant before filing any motions to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4) The Court will attempt service on Defendant by mailing a waiver of service. If Defendant fails to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant and will require Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

5) Defendant shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the answer is necessary or will be considered. If Defendant has not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

6) If Defendant no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk

Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of Defendant's forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7) This District uses electronic filing, which means that after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendant's counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8) Defendant's counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendant's counsel shall arrange the time for the deposition.

9) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10) Plaintiff shall be provided a copy of all pertinent medical records upon request.

11) Within 10 days of receiving from Defendant's counsel an authorization to release medical records, Plaintiff is directed to sign and return the

authorization to Defendant's counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

    12)    The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: February 13, 2026

           <u>s/Jonathan E. Hawley</u>
           U.S. District Judge